## Odenwelder *v.* Frankenfield, Appellant.

*Fence law—Division line—Act of March* 11, 1842.

Where a private lane between two farms, running from one public road to another, is closed by the owner of the land upon which the lane is situated, the other owner may build a division fence along his side of the lane and compel his neighbor to contribute to the cost of the fence.

In such a case the fact that an old fence stood on the neighbor's land sixteen feet from the division line, will not relieve him from contribution for the division fence, unless it appears that he intended the old fence to be a substitute for the division fence.

Argued March 7, 1893.    Appeal, No. 21, July T., 1892, by defendant, Leonard Frankenfield, from judgment of C. P. Northampton Co., Oct. T., 1889, No. 54, on verdict for plaintiff, Owen Odenwelder.   Before Sterrett, C. J., Green, Williams, McCollum and Thompson, JJ.

Appeal from judgment of justice of the peace.

At the trial, before Reeder, J., it appeared that plaintiff and defendant were owners of adjoining farms, the division line between them being along the west side of a private lane. The lane formerly connected two public roads, but in 1888 the lower part of it was closed, with defendant's consent. The lane was wholly on lands of defendant. The situation of the lane is indicated by the following plan:

Fence viewers reported that defendant should pay a portion of the cost of construction of the fence along the west side of the lane.

When plaintiff was on the stand he was asked: "Q. Is there any lane from that point on down to the Freemansburg or Lower Bethlehem road?  A. No, no lane at all."   Objected to as immaterial and irrelevant.   By Mr. Meyers: This is offered for the purpose of showing that it was contemplated to close the entire lane.   Objection overruled and exception. [1]

He was also asked: "Q. Mr. Odenwelder, after that obstruc-

tion was placed across the lane north of the Koehler property and after the line along Koehler's—the lane along Koehler's—had been closed up there, have you used that lane, or have you had occasion to use that lane at all?" Objected to as incompetent and irrelevant. Objection overruled and exception. "A. I have no occasion to use it. Q. Have you used it? A. No." [2]

Jerome Myers, a witness for plaintiff, was asked: "Q. Has that part of this road, ever since it has been closed there, been used by the public? A. No. Q. It couldn't be used? A. No. Q. Up to the end of Koehler's line? A. No." Defendant's counsel moved to strike out the above. By the Court: We will strike out that question and answer, and will permit it to be repeated, and give you an opportunity to make your objection. The last question is stricken out, and the stenographer directed to repeat the question to the witness, which is objected to as incompetent and irrelevant. Objection overruled and exception. [3]

Plaintiff's point was as follows:

"If the jury find the facts, that, at and before the fence viewers were on the ground, the lane leading from the Upper Easton and Bethlehem road to the Lower Easton and Bethlehem road was closed at any point south of the division line between lands of Owen Odenwelder and Leonard Frankenfield, in question, and also at said lane, and that since then the said lane south of the lands of Leonard Frankenfield and Anthony Koehler to the Lower Easton and Bethlehem road has been closed to travel, and the said lane along the said division line in question is wholly on the land of said Leonard Frankenfield and used solely by him as a private road for his own convenience, then the line between said lane so used by said Leonard Frankenfield and the land of said Owen Odenwelder is a division line contemplated by the act of March 11, 1842, that the said fence viewers had jurisdiction in the premises, and the verdict must be in favor of the plaintiff Owen Odenwelder for the amount returned by the said fence viewers with interest from August 20, 1889." Affirmed. [4]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, and (4) instructions, quoting bills of exception, evidence and instructions.

*P. C. Evans*, for appellant, cited: Smith v. Johnson, 76 Pa. 191; Potts v. Everhart, 26 Pa. 498; Painter v. Reece, 2 Pa. 127; Dysart v. Leeds, 2 Pa. 489; Rohrer v. Rohrer, 18 Pa. 367; Palmer v. Silverthorn, 32 Pa. 65.

*O. H. Meyers*, for appellee, cited: Rohrer v. Rohrer, 18 Pa. 367; Holdane v. Trustees, 21 N. Y. 474; Wood v. Veal, 5 B. & Ald. 454; Piper v. Piper, 60 N. H. 98; Chase v. Jefts, 58 N. H. 280.

OPINION BY MR. JUSTICE THOMPSON, March 20, 1893:

Under the act of March 11, 1842, relating to line fences, viewers found that the appellant was liable to contribute his proportion of the cost of a division fence, between his farm and that of the appellee. It was contended in the court below that these viewers had no jurisdiction, because the fence in question was along a public road or lane; because along such lane the land was not improved land within the meaning of the act; and because the appellant maintained another fence which was a substitute for the division fence. If the fence in question was along a public road or a lane open to the public, between two main roads, or if another fence was maintained by appellant as a substitute for the division fence, the appellant was not liable and the viewers had no jurisdiction. It follows therefore that the status of the lane, its location upon the land of the appellant, and its private use by him were material facts, and there is no error in the admission of evidence in regard to them. This lane originally existed between the two farms uniting two public roads. The appellant with others closed it at a point upon his farm. The portion left open was used by him for his private use. Having thus closed it to the public, as between him and the appellee, to escape a liability, it did not lie in his mouth to assert that the lane still continued to be a public thoroughfare. By his own acts he thus changed the character of the lane from a public thoroughfare to a private lane.

It was contended that, under Rohrer v. Rohrer, 18 Pa. 367, the lane was not improved land within the meaning of the act, but that decision was based upon the fact that the lane there was a public thoroughfare. The court said: " The lane thus produced is open to the public. It is open upon both ends and the proof is that Christian's cattle used it. It amounts to a

dedication to the public use." In this case however, the jury having found that the lane was a private lane, the principle of that case does not apply.

It was contended that as there was another fence upon the appellant's land he was not bound to contribute to the cost of this division fence. That fence, sixteen feet from the division line, had been erected as early as 1841, when the two farms were one. It was not erected or maintained as a substitute for, or to avoid contribution for a division fence. The court substantially submitted to the jury the question whether the appellant had by his acts or declarations indicated that such fence was intended as a substitute for the division fence. In affirming appellee's point the court below left it to the jury to find that if before the fence viewers were upon the ground the lane in question was closed at a point south of the division line between the lands of the appellant and appellee; that if in closing off said lane south of the lands in question it had been closed to travel, and that if said lane was wholly upon the land of the appellant, and used solely by him as a private road, and for his own convenience, the line was a division line contemplated by the act of March 11, 1842.

The jury having by its verdict found these facts for the appellee, the viewers had jurisdiction and the judgment is affirmed.